# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **DANIEL P. REGENOLD,** | |
| Plaintiff, | Case No. 2:21-cv-1916 |
| v. | Judge James L. Graham |
| **OHIO STATE BOARD OF EDUCATION,** *et al.,* | Magistrate Judge Chelsey M. Vascura |
| Defendants. | |

**OPINION AND ORDER**

This matter is before the Court on the Motion to Dismiss and Stay Proceedings filed by Defendants the Ohio State Board of Education, Laura Kohler, Meryl Johnson, Martha Manchester, Antoinette Miranda, and Christina Collins (collectively, "Defendants"). (ECF No. 8.) For the reasons that follow, Defendants' motion is **GRANTED IN PART AND DENIED IN PART**.

## I.      BACKGROUND

### A.  Factual Allegations

The following factual allegations are taken from Plaintiff's Amended Complaint (ECF No. 2) and accepted as true for purposes of this motion.

In November 2019, the Ohio State Board of Education (the "Board") included the 1619 Project in its November 2019 newsletter as an educational resource. (Am. Compl. ¶ 22.)

On July 14, 2020, the Board adopted the "Resolution to Condemn Racism and to Advance Equity and Opportunity for Black Students, Indigenous Students and Students of Color" (the "Resolution"). (*Id.* at ¶ 17.)

After the public participation portion of the Board's November 10, 2020 meeting, Board President Laura Kohler determined that going forward, members of the public were precluded

1

from speaking about anything relating to the Board's decision to adopt the Resolution, including, without limitation, critical race theory or the 1619 Project, during the public participation portion of future meetings. (*Id.* at ¶ 33.)

Section VII (I) of the Board's Policies and Procedures Manual allows members of the public:

> who wish to address the State Board on issues of general interest or items not scheduled for a vote at the current meeting will be permitted to address the State Board following the voting on items of business at that meeting. In either instance, the individual may speak for a period not to exceed five minutes. The president may impose further limitations on public participation as deemed appropriate or necessary.

(*Id.* at ¶ 24.)

In advance of the April 13, 2021 Board meeting, Plaintiff Daniel Regenold called the Board to request access to the public comment portion of the meeting to speak on the topic of critical race theory. (*Id*. at ¶ 57.) During his telephone conversation with Board staff member, Alex Goodman, Goodman informed Plaintiff that per Kohler's decision, public comment on the subject of "race" was no longer allowed during the public participation portion of Board meetings. (*Id*. at ¶ 58.)

Later that day, Plaintiff emailed Kohler relaying his desire to testify at the April 13, 2021 meeting on the topic of critical race theory as an "important topic in Ohio Education" and requested a Zoom link to the meeting and a scheduled time to testify. (*Id*. at ¶ 61.)

Kohler responded to Plaintiff's email by stating:

> As president, I made the decision in the late fall of 2020 to limit public comment on two issues, the Board's Resolution to Condemn Racism and to Advance Equity and Opportunity for Black Students, Indigenous Students and Students of Color (which was adopted in July, 2020) and the 1619 Project to written testimony only.

(*Id.* at ¶ 62.)

Citing that decision, Kohler denied Plaintiff access to the meeting. (*Id.* at ¶ 63.)

During the April 13, 2021 meeting, Kohler acknowledged that she "had a couple of speakers who wanted to address the Board on critical race theory," but that she denied the requests to speak during the public participation portion of the meeting because of the subject matter of the speaker's anticipated comments and cited, "the policy we have been using for the past six months" as the reason for her denial. (*Id.* at ¶¶ 36–38.)

Kohler next considered whether to re-open the public participation portion of future Board meetings for comments on the Resolution, critical race theory, or the 1619 project and invited comments from other Board members. (*Id.* at ¶ 39.) Board members Meryl Johnson, Martha Manchester, Antoinette Miranda, and Christina Collins voiced their opposition to revising the November 2020 policy and supported keeping the current policy in place. (*Id.* at ¶¶ 42–53.) Kohler ultimately apologized for revisiting the issue and agreed to keep the current policy in place. (*Id.* at ¶¶ 40, 54.)

### B. Procedural Background

Plaintiff filed this action alleging that Defendants' denial of access to the public participation forum of their meetings violates his First Amendment rights to freedom of speech and to petition the Government for a redress of grievances. Plaintiff claims he and others have been barred from accessing the Board's public forum based upon the content or viewpoint of their anticipated statements or testimony on topics such as the Resolution, critical race theory, or the 1619 Project, and that Defendants have publicly declared that exclusion from the Board's public forum will continue based solely upon the content or viewpoint of the speakers' anticipated speech on these topics. (*Id.* at 33.) Plaintiff seeks preliminary and permanent injunctive relief, declaratory judgment, and damages arising from Defendants' alleged constitutional violation.

On April 28, 2021, Plaintiff moved this Court, pursuant to Federal Rule of Civil Procedure 65(b), for issuance of a preliminary injunction directing the Board and Kohler to permit Plaintiff and other members of the public to speak during the public comment portion of future Board meetings on the topics of the Resolution, critical race theory, or the 1619 Project. (ECF No. 3.)

On May 2, 2021, Defendants moved this Court, pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6) to dismiss this case and to stay the proceedings in this case, including Plaintiff's Motion for Preliminary Injunction, pending resolution of their motion.

Defendants' motion is ripe for adjudication.

## II. STANDARD OF REVIEW

Defendant Ohio State Board of Education moves to dismiss Plaintiff's claim, pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of subject-matter jurisdiction. The Board does not contest the facts laid out in Plaintiff's Complaint and therefore brings a facial attack. *See DLX, Inc. v. Kentucky,* 381 F.3d 511 (6th Cir. 2004). When reviewing a facial attack, courts take all of the allegations in the complaint as true. *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012).

Defendants Kohler, Johnson, Manchester, Miranda, and Collins (collectively, the "Board Members") move to dismiss Plaintiff's claim against them under Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss brought pursuant to Rule 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will be considered "plausible on its face" when a plaintiff sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court should construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material

allegations in the complaint as true. *Iqbal,* 556 U.S. at 679; *Erickson v. Pardus,* 551 U.S. 89, 93–94 (2007); *Twombly,* 550 U.S. at 555–56. "In evaluating a motion to dismiss, [courts] 'may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein.'" *Luis v. Zang,* 833 F.3d 619, 626 (6th Cir. 2016) (quoting *Kreipke v. Wayne State Univ.,* 807 F.3d 768, 774 (6th Cir. 2015)).

### III. DISCUSSION

Defendants move to dismiss this case, arguing that each has immunity from Plaintiff's suit. Because this case is before the Court in the motion-to-dismiss posture, the Court accepts the allegations set forth in Plaintiff's Amended Complaint as true and draws all reasonable inferences in his favor. *Bickerstaff v. Lucarelli,* 830 F.3d 388, 396 (6th Cir. 2016).

#### A. The Ohio State Board of Education

The Ohio State Board of Education submits that this Court lacks jurisdiction over Plaintiff's claims against it under the Eleventh Amendment to the Constitution, which bars suits against a state in federal court unless that state has consented to suit, waived its sovereign immunity,[1] or Congress has abrogated Eleventh Amendment immunity by statute.[2] Congress did not abrogate states' Eleventh Amendment immunity through § 1983. *Quern v. Jordan*, 440 U.S. 332 (1979). The State of Ohio has not waived its sovereign immunity, nor has it consented to civil rights suits in federal court. *Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999). Eleventh

---

[1] A state's "sovereign[] immunity may be waived, and the Court consistently has held that a State may consent to suit against it in federal court." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984).
[2] The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

5

Amendment immunity applies not only to the states themselves but also to "state agents and instrumentalities." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997).

The State Board of Education is a state agency established by Article VI, Section 4 of the Ohio Constitution and provides general supervision of Ohio's public education system. Ohio Rev. Code § 3301.07. As a state agency, the Board enjoys Ohio's sovereign immunity in federal court. *Brinkman v. Gilligan*, 610 F. Supp. 1288, 1291 (S.D. Ohio 1985) (finding that as an arm of the state, the Ohio State Board of Education is "enveloped by the state's Eleventh Amendment immunity"). The State Board of Education is therefore immune against Plaintiff's suit against it in federal court. Accordingly, the Court dismisses Plaintiff's § 1983 claim against the Board for lack of subject-matter jurisdiction.

### B. The Board Members

Plaintiff brings suit against the Board Members in their official capacities for declaratory and injunctive relief and in their individual capacities for monetary, declaratory, and injunctive relief.

#### i. Official Capacities

Generally, a state official sued in his or her official capacity is not a "person" subject to suit under § 1983. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 70–71 (1989). Under the exception set forth in *Ex parte Young*, "a suit by a citizen challenging the constitutionality of a state official's action is not barred by the Eleventh Amendment." *Brinkman,* 610 F. Supp. at 1291–92 (citing *Ex parte Young*, 209 U.S. 123 (1908) (determining that plaintiffs may seek injunctive relief against a state official for a violation of federal law)). Here, the Court assumes Plaintiff's well-pleaded allegations to be true, and Plaintiff seeks to enjoin the Board Members from violating his First and Fourteenth Amendment rights and an order compelling them to provide equal access

to future Board meetings. Insofar as Plaintiff seeks injunctive relief from this Court to compel the Board Members to comply with federal law, this Court has jurisdiction over the Board Members sued in their official capacities.

Here, Plaintiff also avoids sovereign immunity by suing the Defendant Board Members in their official capacities for declaratory relief. *Johnson v. Dellatifa,* 357 F.3d 539, 545 n.1 (6th Cir. 2004) (citing *Will,* 491 U.S. at 71 n.10).

Defendants argue that legislative immunity bars Plaintiff's claim for prospective relief against the Board Members in their official capacities, but absolute immunity only applies to state officials sued in their individual capacities. *Benison v. Ross,* 765 F.3d 649, 665 (6th Cir. 2014) ("[P]ersonal immunity defenses, such as absolute immunity or qualified immunity, are not available to government officials defending against suit in their official capacities."); *Cady v. Arenac Cty.*, 574 F.3d 334, 342 (6th Cir. 2009) ("Absolute immunity is a personal defense that is unavailable in an official-capacity action.").[3] The Court therefore denies Defendants' Motion to Dismiss with regard to Plaintiff's claim against the Board Members in their official capacities.

The Court now turns to whether absolute immunity is applicable to the individual capacities claim in the present case.

### ii. Individual Capacities

Defendants move to dismiss Plaintiff's claim against the individual Board Members, pursuant to Rule 12(b)(6), arguing that legislative immunity precludes Plaintiff's claim against the Board Members in their individual capacities for monetary, declaratory, and injunctive relief.[4]

---

[3] Both Sixth Circuit cases cite the Supreme Court's decision in *Kentucky v. Graham,* 473 U.S. 159, 166–67 (1985).
[4] State officials may be sued in their individual capacities for monetary damages. *Hafer v. Melo,* 502 U.S. 21, 30 (1991).

State officials not a part of the legislature "are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris,* 523 U.S. 44, 55 (1998). Legislative immunity encompasses monetary relief and "is equally applicable to § 1983 actions seeking declaratory or injunctive relief." *Sup. Ct. of Va. v. Consumers Union of the U.S.*, 446 U.S. 719, 732 (1980). Officials may "insulate themselves as *individuals* from liability based on their legislative activities." *Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 218 (6th Cir. 2011) (emphasis in original). But "the various activities of most [] officials cannot be characterized as only administrative, legislative, or judicial. Instead, the scope of immunity depends on the nature of the activity involved." *Haskell v. Washington Twp.,* 864 F.2d 1266, 1277–78 (6th Cir. 1988). The existence of immunity does not turn on "the motive or intent of the official performing" the act. *Bogan,* 523 U.S. at 54.

Two factors guide this determination. First, the Court "must consider whether a defendant's actions were legislative in form., *i.e.*, whether 'they were integral steps in the legislative process.'" *Anders v. Cuevas,* 984 F.3d 1166, 1181 (6th Cir. 2021) (quoting *Bogan,* 523 U.S. at 55). The Court next "must ask whether a defendant's actions were 'legislative in substance,' *i.e.*, whether the actions 'bore all the hallmarks of traditional legislation,' including whether they 'reflected . . . discretionary, policymaking decision[s] implicating the budgetary priorities' of the government and the services the government provides to its constituents." *Id.* at 1181–82 (quoting *Bogan,* 523 U.S. at 55–56).

Defendants bear the burden of establishing legislative immunity. *Canary v. Osborn*, 211 F.3d 324, 328 (6th Cir. 2000). The relevant inquiry here is whether "'stripped of all considerations of intent and motive,'" Kohler's denial of access to the public comment portion of the April meeting based on Plaintiff's intent to address critical race theory and the Board Members' decision

to continue denying speech on this topic, the 1619 Project, and the Resolution were legislative actions, rather than administrative or executive actions. *Anders,* 984 F.3d at 1181 (quoting *Bogan,* 523 U.S. at 55).

Defendants offer several arguments in support of their assertion that their actions were legislative. Defendants first point to *Guindon v. Twp. of Dundee,* 488 F. App'x 27, 33 (2012), where the Sixth Circuit determined that the township board's "decision not to place Guindon on the agenda was a legislative act" to argue that Kohler's denial of Plaintiff's access to the public comment portion of the April Board meeting was agenda setting.

Defendants next point to a decision from another district court within this circuit, where the court examined whether defendant city council members were entitled to legislative immunity for terminating or truncating the plaintiff's commentary during the public-comment portion of their meetings. *Timmon v. Wood*, 633 F. Supp. 2d 453 (W.D. Mich. 2008), *aff'd, Timmon v. Wood*, 2009 U.S. App. LEXIS 28974 (6th Cir. Jan. 21, 2009). There*,* the court determined that defendant city council members' actions were legislative, because they "furthered the Council's investigatory and information-gathering needs when they presided over the public-comment period [and] [d]irecting a speaker's comments to relevant, city matters is integral to furthering the recognized legislative function of determining the 'priorities of the city and the services the city provides its constituents.'" *Id.* at 460 (cleaned up). Citing *Timmon,* Defendants argue that Kohler was regulating public commentary on certain topics.

Defendants also argue that the other Board Members were engaging in legislative debate by commenting on Kohler's policy and how information is channeled to the Board on these topics, and their actions are also covered by legislative immunity.

9

Plaintiff counters that Kohler's denial of access to the established public forum at Board meetings is an administrative or executive function, because such action was neither legislative in form, *i.e.,* an integral part of the legislative process, nor legislative in substance, *i.e.,* bearing all the hallmarks of traditional legislation. Plaintiff asserts that the challenged actions are administrative or executive rather than legislative, because Kohler was not taking legislative action in relation to business before the Board when she applied preexisting policy to him by denying his access to the public comment portion of the April meeting, and the Board Members did not formulate a new policy when deciding to continue with their existing policy prohibiting public speech on the Resolution, critical race theory, or the 1619 Project.

Plaintiff also maintains that Defendants' conclusory statement that legislative immunity applies to a suit "over [the other Board Members'] comments in a Board session" is insufficient to establish their entitlement to legislative immunity.

The Sixth Circuit has found "little guidance in formalistic distinctions between 'legislative' and 'adjudicatory' or 'administrative' government actions.'" *Smith*, 641 F.3d at 216 (quoting *Nasierowski Bros. Inv. Co. v. Sterling Heights*, 949 F.2d 890, 896 (6th Cir. 1991)). In *Guindon,* which was decided after *Timmon,* the Sixth Circuit also acknowledged that whether the decision to ban someone "from further comment . . . during the open comment period was a legislative act is a closer question," and declined to answer that question in their decision. 488 F. App'x at 33.

The Court turns to precedent from other circuits to assist in determining the nature of Defendants' actions.

Plaintiff highlights the Seventh Circuit's decision in *Hansen v. Bennett,* 948 F.2d 397 (1991) to support his argument that the Board Members' actions were not integral steps in the legislative process. In *Hansen,* the Seventh Circuit held that a mayor was not acting in a legislative

10

capacity when he regulated comments during the open comment portion of a public meeting, during which citizens were permitted to speak on any issue, including issues not on the meeting agenda. *Id.* at 402–03.

Plaintiff argues that this case is more analogous to *Hansen,* because there, "'any citizen' was allowed to speak on any issue, including issues not on the agenda." *Id.* at 402. Likewise, in the instant case, under the Board's existing policy, members of the public are afforded five minutes to address "issues of general interest or items not scheduled for a vote at the current meeting." In *Hansen,* where the mayor "regulated an open public discussion of various issues," the Seventh Circuit determined that "he was not acting in a legislative capacity." *Id.* at 403. Here too, Plaintiff argues that Kohler's decision to prohibit him from speaking during the open comment portion of the Board's April public meeting was not a legislative function.

Moreover, the Tenth Circuit, relying on Supreme Court precedent, determined that, "at its core, the legislative function involves determining, formulating, and making policy." *Kamplain v. Curry Cnty. Bd. of Com'rs*, 159 F.3d 1248, 1251 (10th Cir. 1998) (quoting *Powell v. McCormack,* 395 U.S. 486, 502 (1969) (finding legislative actions must be done "in relation to the business before" the legislative body); *Prentis v. Atlantic Coast Line Co.,* 211 U.S. 210, 226 (1908) ("Legislation . . . looks to the future and changes existing conditions by making a new rule, to be applied thereafter to all or some part of those subject to its power.") .

Plaintiff argues that at this juncture, all of the Board Members have failed to sustain their burden that they were performing legislative functions when denying access to public speaking on specified topics during the public participation portion of their meetings. The Court agrees.

11

Here, based on the allegations in Plaintiff's Amended Complaint and the matters the Court has taken judicial notice of,[5] Defendants have not established that their actions in denying Plaintiff the opportunity to speak during the public participation portion of the Board's April meeting on the topic of critical race theory and decision to preclude public speech on the topics of the Resolution, critical race theory, or the 1619 Project at future Board meetings were legislative in both form and substance.

The allegations support a reasonable inference that Kohler's denial of Plaintiff's speech at the April meeting, and Defendants' decision to preclude speech on the topics of the Resolution, critical race theory, or the 1619 Project during the public participation portion of future Board meetings were executive or administrative in form and substance.

The Board's policy, Section VII (I) of the Policies and Procedures Manual, which allows the president to "impose further limitations on public participation as deemed appropriate or necessary" was already in place, along with Kohler's November 2020 decision preventing the public from speaking on the Resolution, critical race theory, or the 1619 Project. Defendants were not creating policy but were first applying the policy outlined in the manual to Kohler's November 2020 decision to limit public comment on certain issues. Kohler next applied her November 2020 policy decision to Plaintiff and his desire to address critical race theory at the April meeting, and finally, the Board Members decided not to formulate new policy but to keep the November 2020 policy in place. None of Defendants' April actions directed at precluding public speech on the Resolution, critical race theory, or the 1619 Project involved business before the Board where Defendants formulated new policy.

---

[5] "Normally, in deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint. However, courts may also consider matters of which they may take judicial notice." *Lovelace v. Software Spectrum*, 78 F.3d 1015, 1017–18 (5th Cir. 1996).

At this stage of the proceedings, based on what the Court may consider from the record and drawing all reasonable inferences in Plaintiff's favor, the Court finds that Defendants are not entitled to legislative immunity, and therefore denies Defendants' Motion to Dismiss with regard to Plaintiff's claim against the Board Members in their individual capacities.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss and Stay Proceedings (ECF No. 8). The Court **GRANTS** Defendants' motion **IN PART** and dismisses Plaintiff's § 1983 claim against the Ohio State Board of Education for lack of subject-matter jurisdiction. The Court **DENIES** Defendants' motion **IN PART** by denying the balance of Defendants' motion regarding Plaintiff's claim against the Board Members in their individual and official capacities and Defendants' request to stay the proceedings.

Plaintiff's Motion for Preliminary Injunction (ECF No. 3) remains pending before the Court, and pursuant to the Court's May 5, 2021 Order, the proceedings on this motion have been consolidated with the hearing on the merits under Federal Rule of Civil Procedure 65(a)(2). (ECF No. 13.)

The Court therefore sets the following case schedule:

- Written discovery shall conclude on or before August 2, 2021.
- Depositions shall conclude on or before September 1, 2021.
- A hearing on both Plaintiff's Motion for Preliminary Injunction and the merits in this case is set for Monday, December 6 at 9:30 AM. A Notice of Hearing shall follow the issuance of this Order.

**IT IS SO ORDERED.**

/s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: July 9, 2021